# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO SALGADO, | Case No. EDCV 10-0467-JEM |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## PROCEEDINGS

On April 7, 2010, Arturo Salgado ("Plaintiff" or "Claimant") filed a Complaint seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits under Titles II and XVI of the Social Security Act. On October 5, 2010, the Commissioner filed an Answer to the Complaint. On December 14, 2010, the parties filed a Joint Stipulation ("JS") setting forth their positions and the issues in dispute.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the undersigned Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be affirmed and the case dismissed with prejudice.

## BACKGROUND

Plaintiff was born on May 12, 1967, and was 40 years old on his alleged disability onset date of November 16, 2007. (AR 113.) Plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits on February 23, 2009 (AR 111-21), and claims he is disabled due to epilepsy. (AR 138.) Plaintiff has not engaged in substantial gainful activity since November 16, 2007. (AR 13, 138.)

Plaintiff's claim was denied initially on April 20, 2009 (AR 44-47), and on reconsideration on June 19, 2009. (AR 51-56.) After filing a timely request for hearing, Plaintiff appeared with counsel and testified at a hearing held on October 29, 2009, before Administrative Law Judge ("ALJ") Jay E. Levine. (AR 25-39.) The ALJ issued a decision denying benefits on December 10, 2009. (AR 11-17.) On January 18, 2010, Plaintiff filed a timely request for review of the ALJ's decision. (AR 4.) The Appeals Council denied review on February 26, 2010. (AR 5-7.) Plaintiff then commenced the present action.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, there are two disputed issues:

1. Whether the ALJ properly considered Plaintiff's inability to communicate in English at step five of the sequential evaluation; and

2. Whether the ALJ should have asked the vocational expert specific questions about Plaintiff's seizures.

(JS at 2.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d) (1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. Third, the ALJ must determine whether the impairment is listed, or equivalent to an

impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must account for all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

///

///

///

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

**DISCUSSION**

**A.    The ALJ's Decision**

In this case, the ALJ determined at step one of the sequential evaluation that Plaintiff has not engaged in substantial gainful activity since November 16, 2007, his alleged disability onset date. (AR 13.)

At step two, the ALJ determined that Plaintiff's seizure disorder is a severe impairment. (AR 13.)

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (AR 13.)

The ALJ found that Plaintiff has the RFC to perform very heavy work without exposure to unprotected heights or dangerous machinery. (AR 14.)

At step four, the ALJ determined that Plaintiff could not perform his past relevant work as a driver. (AR 15.)

At step five, the ALJ relied on the testimony of a vocational expert in determining that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically hospital cleaner, hand packager, and floor waxer. (AR 16.) The ALJ therefore concluded that Plaintiff is not disabled. (AR 17.)

**B.    The ALJ's Failure to Consider Plaintiff's Limited English Language Ability at Step Five Was Harmless Error.**

Plaintiff contends that the ALJ failed to consider Plaintiff's limited English language ability in making the step five determination that Plaintiff could perform the occupations of hospital cleaner, hand packager, and floor waxer. (JS at 3-7, 9-10.) The Court agrees that the ALJ did not expressly consider Plaintiff's limited English language ability, but concludes that any error in failing to do so was harmless.

**1.    Relevant Law**

At step five of the sequential evaluation, the Commissioner has the burden to demonstrate that the claimant can perform work that exists in "significant numbers" in the

national economy, taking into account the claimant's RFC, age, education, and work experience. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R § 404.1560(b)(3)). ALJs routinely rely on the Dictionary of Occupational Titles ("DICOT") "in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). The DICOT is the presumptive authority on job classifications. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DICOT. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p ("[T]he adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] evidence and information provided in the [DICOT].")). In order for an ALJ to accept vocational expert testimony that contradicts the DICOT, the record must contain "persuasive evidence to support the deviation." Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997).

However, an ALJ need not always rely on vocational expert testimony to satisfy his burden at Step Five. Depending upon the circumstances, reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids") may suffice. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant suffers only exertional limitations, the ALJ must consult the Grids. Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006). When a claimant suffers from both exertional and nonexertional limitations, the ALJ must first determine whether the Grids mandate a finding of disability with respect to exertional limitations. See Lounsburry, 468 F.3d at 1116; Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). If

so, the claimant must be awarded benefits. Cooper, 880 F.2d at 1155. If not, the ALJ may be required to take the testimony of a vocational expert. Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). Vocational expert testimony is required only if the non-exertional limitations are at a sufficient level of severity to make the Grids inapplicable to the particular case. The severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two. Id.

### 2. Analysis

In this case, the ALJ acknowledged that Plaintiff "is not able to communicate effectively in English" and considered him to be effectively "illiterate in English." (AR 16.) Nonetheless, the three occupations identified by the ALJ at step five all require "Level 1" or "Level 2" language skills. DICOT 323.687-010 (hospital cleaner, level two), 381.687-034 (floor waxer, level one), 559.687-074 (hand packager, level two). Level one language skills include the abilities to "[r]ecognize [the] meaning of 2,500 (two- or three-syllable) words" and "[r]ead at [a] rate of 95-120 words per minute." DICOT 381.687-034. Those with level two language skills possess a "[p]assive vocabulary of 5,000-6,000 words" and can "[r]ead at [a] rate of 190-215 words per minute" and "look[] up unfamiliar words in [a] dictionary for meaning, spelling, and pronunciation." DICOT 323.687-010, 559.687-074. Given the ALJ's finding that Plaintiff was so limited in English that he was effectively illiterate, the vocational expert deviated from the DICOT in finding that Plaintiff could perform positions that require at least some level of literacy. The ALJ failed to ask the vocational expert to explain the deviation. (AR 36-38.) His unexplained assertion that "the vocational expert's testimony is consistent with the information contained in the [DICOT]" (AR 16) does not cure this defect. The ALJ's failure to assess the impact of Plaintiff's limited English language ability at step five constitutes legal error. See Pinto, 249 F.3d at 847-48 (remanding for further proceedings where "[n]either the ALJ nor the vocational expert addressed the impact of [the claimant's] illiteracy on her ability to find and perform a similar job").

However, the Court concludes that the ALJ's error was harmless. The ALJ noted that section 204.00 of the Grids directs a finding of not disabled for an individual capable of very heavy work. (AR 16 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 204.00).) An individual capable of performing very heavy work is also capable of performing heavy, medium, light and sedentary work, and the Grids provide that "an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 204.00; see 20 C.F.R. §§ 404.1567(e), 416.967(e). The Commissioner points out that an illiterate individual in Plaintiff's age range capable of performing only light work is considered "not disabled" under the Grids, and argues that Plaintiff's other non-exertional limitations are not sufficiently severe to preclude reliance on the Grids. (JS at 7-9 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.16 (a finding of "not disabled" is directed for a younger individual who is "[i]lliterate or unable to communicate in English" and has only unskilled or no work experience)).) The Commissioner's argument is persuasive. Plaintiff's other non-exertional limitations prevent him from working "at unprotected heights or near dangerous machinery." (AR 14.) The Commissioner has determined that "[a] person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exist[s] at all exertional levels." SSR 85-15. Therefore, Plaintiff's non-exertional limitations are not sufficiently severe to render the Grids inapplicable to his case and make vocational expert testimony necessary. See Hoopai, 499 F.3d at 1075 (reliance on Grids appropriate where a claimant's nonexertional limitations are not "'sufficiently severe' as to significantly limit the range of work permitted by the claimant's exertional limitations"); Greggs v. Astrue, 2010 WL 2581963, at *4 (M.D. Ala. June 22, 2010) (ALJ did not err in relying on the Grids where claimant's only non-exertional limitations related to his seizure disorder and "involve[d]

1 unprotected elevations and dangerous moving machinery (as well as open waters)" (citing
2 SSR 85-15)). The ALJ's failure to consider explicitly Plaintiff's limited English language
3 ability at step five was therefore harmless error because it does "not negate the validity of the
4 ALJ's ultimate conclusion." See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190,
5 1197 (9th Cir. 2004). The ALJ's step five determination that Plaintiff is not disabled is fully
6 supported by the Grids.

       **C.    The ALJ Properly Determined Plaintiff's RFC and Posed a Complete Hypothetical Question to the Vocational Expert.**

9       Plaintiff next argues that his "seizures should have been included in the [RFC] finding"
10 and "in the hypothetical question to the [vocational expert]." (JS at 10-11, 14.) The Court
11 disagrees.
12       Plaintiff does not challenge the ALJ's evaluation of any of the medical evidence.
13 Instead, Plaintiff points out that he has had three seizures since his November 2007 onset
14 date, and that each time he "was not in touch with reality for twenty to twenty[-]five minutes"
15 and required emergency care. (JS at 10.) Therefore, Plaintiff concludes, the ALJ should
16 have included in his RFC determination and in his hypothetical question to the vocational
17 expert that Plaintiff would "on an average of twice a year [have] a seizure incapacitating [him]
18 for 20-25 minutes and requiring emergency care and thereafter three to seven days to
19 recover." (JS at 11.) Plaintiff's argument fails because he cannot point to any medical
20 opinion stating that he would continue to have an average of two seizures per year with
21 those particular features. The ALJ's inclusion in Plaintiff's RFC of the prophylactic limitations
22 of avoiding unprotected heights and dangerous machinery reasonably accounts for Plaintiff's
23 seizures. Indeed, the ALJ's RFC correlates with the opinion of Plaintiff's treating physician,
24 Dr. Torres, who wrote that Plaintiff could safely return to work in September 2008 but that
25 Plaintiff was "unable to work as a commercial driver" in February 2009. (AR 348, 379.) The
26 ALJ determined that Plaintiff's RFC did not permit him to work as a driver but it did permit
27 him to perform other jobs that exist in significant numbers in the national economy. (AR 15-
28

16.) The ALJ's RFC determination is supported by substantial evidence, and the ALJ properly included in his hypothetical to the vocational expert "all of the limitations that [he] found credible and supported by substantial evidence in the record." See Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005). The ALJ was not required to include limitations that were not part of his findings. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Osenbrock, 240 F.3d at 1165. A reversal or remand on this basis is not warranted.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED and that this action is dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 22, 2011

        */s/ John E. McDermott*
        JOHN E. MCDERMOTT
        UNITED STATES MAGISTRATE JUDGE